**MANDATE**

21-2229 (L)
*United States of America v. Amanat*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand twenty-four.

PRESENT:
    GUIDO CALABRESI,
    MYRNA PÉREZ,
        *Circuit Judges*,
    ANNE M. NARDACCI,
        *District Judge*.[*]

_____

United States of America,

    Appellee,

    v.                                          Nos. 21-2229 (L), 21-2379 (CON)

Kaleil Isaza Tuzman, Robin Smyth, Stephen E. Maiden, Rima Jameel, Gavin Campion,

    Defendants,

Omar Amanat, Irfan Amanat,

    Defendants-Appellants,

_____

[*] Judge Anne M. Nardacci of the United States District Court for the Northern District of New York, sitting by designation.

1

| | |
|---|---|
| **FOR APPELLEE:** | THOMAS S. BURNETT (Joshua A. Naftalis, David Abramowicz, *on the brief*), on behalf of Damian Williams, United States Attorney for the Southern District of New York, New York, NY |
| **FOR APPELLANT OMAR AMANAT:** | ALEXANDRA A.E. SHAPIRO (Daniel J. O'Neill, Alice Buttrick, *on the brief*), Shapiro Arato Bach LLP, New York, NY |
| **FOR APPELLANT IRFAN AMANAT:** | ANDREW LEVCHUK, Counsellor at Law, LLC, Amherst, MA |

Appeal from judgments of the United States District Court for the Southern District of New York (Gardephe, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Omar Amanat and Irfan Amanat appeal from judgments of the United States District Court for the Southern District of New York, entered August 23, 2021, and September 9, 2021, respectively, convicting them of conspiracy to commit wire fraud, conspiracy to commit securities fraud, aiding and abetting investment-adviser fraud, and wire fraud. We assume the parties' familiarity with the procedural history of the case, the issues on appeal, and the underlying facts.

## DISCUSSION

On appeal, Defendants raise several issues, some jointly and others separately. First, Defendants jointly contend that the district court should have excluded the testimony of FBI Special Agent Joel DeCapua. Second, Defendants jointly contend that the government failed to prove that that the object of Defendants' scheme was "to obtain money or property" and that the government convicted them based on an invalid right-to-control jury instruction. Third, Defendants jointly contend that the wire fraud convictions should be reversed for lack of venue.

2

Lastly, Defendants also urge this Court to find error on separate grounds detailed below. For the reasons below, we reject Defendants' challenges to their convictions.

### A. Expert Testimony

In the present case, we see no abuse of discretion in the district court's decision to allow the testimony of Agent DeCapua. The government offered Agent DeCapua's testimony to support its argument that evidence introduced by Omar Amanat was fabricated. The district court admitted the testimony of Agent DeCapua after considering, among other things, that: he had served nine years in the FBI, including three years in the FBI's cybercrimes squad, where he reviewed hundreds of email headers; he had obtained a variety of relevant certifications, including for completing a course involving the analysis of emails and email headers; and his training and investigative work included a focus on analyzing Message-IDs to determine whether emails have been fabricated.

The district court further heard testimony from Agent DeCapua and argument from counsel regarding Agent DeCapua's testimony. After considering Agent DeCapua's testimony, his experience and training, and counsel's argument, the district court found that Agent DeCapua was sufficiently qualified to testify about Message-IDs and their contents, including the format of universal unique identifiers ("UUID"). That Agent DeCapua has no digital forensics degree or publications concerning digital forensics, as Omar Amanat emphasizes, does not make him unqualified to testify. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (noting that defendant's "quibble with [the expert's] academic training" and "his other alleged shortcomings" such as a "lack of knowledge . . . were properly explored on cross-examination and went to his testimony's weight and credibility—not its admissibility"). Indeed, the district court presented Omar Amanat with opportunities to challenge Agent DeCapua's qualifications,

3

1  attack Agent DeCapua's testimony, and offer his own expert.  Given the circumstances, we see

2  no abuse of discretion in the district court's finding that Agent DeCapua was qualified, reliable,

3  and helpful enough to the jury to testify as an expert at Omar Amanat's trial.  *See id.* at 1042

4  ("The decision to admit expert testimony is left to the broad discretion of the trial judge and will

5  be overturned only when manifestly erroneous.").

6  Lastly, Irfan Amanat waived any challenge to the admission of Agent DeCapua's

7  testimony in Omar Amanat's trial.  Irfan Amanat never attempted to introduce the allegedly

8  fabricated evidence at his trial, Agent DeCapua did not testify at Irfan Amanat's trial, and Irfan

9  Amanat never raised any objection to the admission of Agent DeCapua's testimony at Omar

10 Amanat's trial.  Irfan Amanat's strategic decision not to present evidence regarding the

11 fabrication issue or lodge an objection "constitutes a true waiver which will negate even plain

12 error review." *United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007) (internal quotation

13 marks and citations omitted).[1]  As such, Irfan Amanat may not use this appeal to "evade the

14 consequences of an unsuccessful tactical decision." *United States v. Coonan*, 938 F.2d 1553,

15 1561 (2d Cir. 1991).

16 **B.  Wire Fraud and Related Conspiracy Convictions**

17 We review challenges to the sufficiency of the evidence for plain error where, as here, a

18 defendant raises such argument for the first time on appeal. *See United States v. Allen*, 127 F.3d

19 260, 264 (2d Cir. 1997).  Under plain error review, relief is not warranted unless "(1) there is an

20 error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error

---

[1] Irfan Amanat also cannot blame the law of the case doctrine for his failure to raise an issue in the district court. "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991).  However, we have noted that "[t]he doctrine of the law of the case is not an inviolate rule," *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982); rather, the doctrine "is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment," *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (citation omitted).

4

affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Martinez*, 991 F.3d 347, 351 (2d Cir. 2021) (citation omitted).

To convict a defendant of wire fraud, the government must prove beyond a reasonable doubt: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the . . . wires to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (alterations omitted) (quoting *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996)); *see also* 18 U.S.C. § 1343. Here, the parties do not dispute that the first and third elements have been met. Instead, Defendants contend that the government failed to prove that the object of Defendants' scheme was to obtain money or property. They also assert that the government improperly relied on a right-to-control jury instruction, a theory recently rejected by the Supreme Court in *Ciminelli v. United States*, 598 U.S. 306 (2023). We disagree.

First, there is sufficient evidence in the record for the jury to have found, beyond a reasonable doubt, that the government proved that Defendants engaged in a scheme with the objective of "obtaining money or property." The trial evidence demonstrated that Defendants' fraud scheme involved knowingly inflating revenue and deceiving investors through false statements and information both to keep investors' money at Maiden Capital and to obtain more money from investors. This evidence included Defendants knowingly sending false financial statements from their investment fund, Enable, to Maiden Capital for investors, and testimony as to how these financial statements were crucial to investors' decisions about whether to keep their money at Maiden Capital and invest additional money.

There is also evidence that this scheme was even somewhat successful. Jesse Ellington, a Maiden Capital investor, testified at trial that after investing $250,000 in Maiden Capital, he

invested an additional $100,000 after being misled into believing that Maiden Capital was making strong returns. The evidence also shows that because of Defendants' scheme, Defendants were able to operate an insolvent business at least through 2011. And after Defendants' deception to investors was finally exposed, Defendants' business shattered. Although Omar Amanat did make payments to Maiden Capital to cover redemption requests at times, the evidence supports that it was to conceal Maiden Capital's losses, which in turn was in furtherance of Defendants' scheme to retain or obtain investors' money in a company they were deceived into believing was performing well. Under the present record, there is sufficient evidence for a rational jury to have found beyond a reasonable doubt that Defendants engaged in a scheme to defraud investors of their money and this financial purpose was the object of Defendants' scheme.

Second, we are unpersuaded by Defendants' argument that their convictions should be vacated on the basis that it is impossible to tell whether the jury relied on the improper right-to-control jury instruction pursuant to *Yates v. United States*, 354 U.S. 298 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978); *United States v. Laurent*, 33 F.4th 63, 86 (2d Cir. 2022) ("The Supreme Court made clear in [*Yates*] that a jury verdict constitutes legal error when a jury, having been instructed on two disjunctive theories of culpability, one valid and the other invalid, renders a guilty verdict in circumstances that make it impossible to tell which ground the jury selected."). We review Defendants' unpreserved *Yates* challenge for plain error. *Laurent*, 33 F.4th at 86. Under *Yates*, the third and fourth requirements of plain error review—that "the error affected the appellant's substantial rights" and that "the error seriously affects the fairness, integrity or public reputation of judicial proceedings," *Martinez*, 991 F.3d at 351—are not met if the Court is "confident" that the jury would have rendered a

1  guilty verdict even "in the absence of the error," *Laurent*, 33 F.4th at 87.

2  We note that the Supreme Court in *Ciminelli* held that "the right-to-control theory cannot form the basis for a conviction under [18 U.S.C. § 1343]." *Ciminelli*, 598 U.S. at 317. In doing so, the Supreme Court reversed a Second Circuit decision affirming wire fraud convictions because it was clear that the government had relied *squarely* on the right-to-control theory in the operative indictment and at trial. *Id.* at 309–11, 314–17. Therefore, Defendants are correct that the right-to-control theory is not available under *Ciminelli*. Nonetheless, this case does not compel the same result as *Ciminelli* under plain error review.

In this case, the trial record shows that the government did not rely *solely* on the right-to-control theory. Instead, the government's evidence introduced at trial goes beyond Defendants merely affecting investors' rights to information. Defendants' scheme, unlike the one in *Ciminelli*, involved knowingly sending false financial statements to Maiden Capital investors precisely to deprive them of their money at Maiden Capital and/or to obtain additional money. The government even introduced testimony demonstrating the success of this scheme to obtain money.[2] Given the nature of the scheme here, combined with the undisputed fact that the district court read the jury the traditional property theory in both trials, we are confident that the jury would have convicted Defendants under the traditional property theory in the absence of the invalid right-to-control theory.

---

[2] To the extent Defendants rely on *McCormick v. United States*, 500 U.S. 257 (1991), for the proposition that their convictions cannot be sustained, this case is also inapposite. *McCormick* stands for the proposition that due process is violated when a conviction is affirmed on appeal on the basis of a theory not presented to the jury. *McCormick*, 500 U.S. at 270–71 n.8 ("This Court has never held that the right to a jury trial is satisfied when an appellate court retries a case on appeal under different instructions and on a different theory than was ever presented to the jury. Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury"). In the instant case, the government indicted Defendants under the traditional property theory, the government presented evidence to the jury at trial supporting this theory, and the district court properly charged the jury under this theory.

**C. Venue on the Wire Fraud Count**

We review a challenge to the district court's ruling regarding venue de novo. *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011). "We review the sufficiency of the evidence as to venue in the light most favorable to the government, crediting 'every inference that could have been drawn in its favor.'" *Id*. (citation omitted). "[V]enue may be proved by circumstantial evidence." *United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir. 1984).

Here, although the government may not have offered direct proof that any specific communication was sent to or from the Southern District of New York, the district court properly found sufficient circumstantial evidence for a reasonable juror to conclude by a preponderance of the evidence that at least one of the countless phone, email, and text communications exchanged in furtherance of the fraud scheme was connected to this district. *See* Memorandum Opinion & Order, *United States v. Tuzman*, No. 15-cr-536-PGG (S.D.N.Y. May 3, 2021), ECF No. 1145, at 53–54; *see also United States v. Lange*, 834 F.3d 58, 71 (2d Cir. 2016) (evidence that co-conspirators' exchanged communications within the district in furtherance of the scheme sufficed to establish venue there).

**D. Omar Amanat's Separate Argument**

In addition to his joint challenges discussed above, Omar Amanat contends that his conviction for conspiracy to commit market manipulation should be reversed because the government failed to meet its burden of proof. We are unpersuaded. The evidence introduced to the jury showed that Omar Amanat participated in the charged conspiracy to manipulate KIT Digital's ("KITD") stock by inflating its value to position the company to be sold. The market manipulation scheme originated in 2008, when Omar Amanat, among others, pursuant to the December 2008 agreement, obligated Maiden to buy at least $400,000 of KITD stock. Maiden bought shares pursuant to the agreement in order to manipulate KITD's stock price, which

8

benefited Omar Amanat, among others, because he had an interest in the stock. *See* SA 860; *see Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 76–77 (2d Cir. 2021) (defining a "manipulative act" as a practice that "artificially affect[s] market activity," such as a security's price, and which can include open-market trading). In fact, Omar Amanat knowingly participated in the conspiracy by his own admission, as he stated that Kaleil Tuzman "wouldn[']t have had Maiden's $2.5 million in open market purchases which singlehandedly kept the stock up if [he] didn't spen[d] the time." Supp. App'x at 860. And the record sufficiently shows that this conspiracy continued into 2011, as Maiden testified that he continued to inform Omar Amanat about the stock purchases. Thus, we conclude that the evidence introduced to the jury was sufficient to support a finding that Omar Amanat knowingly conspired to manipulate the KITD stock price.

### E. Irfan Amanat's Separate Arguments

In addition to his joint challenges above, Irfan argues error on the grounds that (1) the evidence was insufficient to sustain his convictions on Counts One and Four of the superseding indictment for conspiracy to commit wire fraud and securities fraud, (2) the evidence was insufficient to establish that he failed to act in good faith in his dealings with Maiden Capital and KITD, and (3) the government constructively amended its superseding indictment at trial. We deem these challenges meritless.

First, as explained above, Irfan Amanat knew that his investment company, Enable, had suffered a loss concerning Maiden Capital's investment; yet, he still helped Maiden deceive investors by sending monthly false account statements that concealed their losses. Indeed, Irfan Amanat also played a key role in concealing the financial performance of KITD by providing Tuzman and Robin Smyth with false audit confirmations, knowing that this false information

9

would be used to support false filings, in order to prevent auditors from discovering KITD's bad investment with Enable. *See, e.g.*, *United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) ("It is not necessary to prove that the defendant expressly agreed with other conspirators on a course of action; it is enough, rather, to show that the parties ha[d] a tacit understanding to carry out the prohibited conduct." (alteration in original) (citation and internal quotation marks omitted)). Ample evidence proved these facts and enabled a rational jury to find Irfan Amanat guilty of Counts One and Four of the superseding indictment for conspiracy to commit wire fraud and securities fraud. And this evidence negates any finding of good faith.

Second, Irfan Amanat's constructive amendment argument, raised for the first time on appeal, likewise fails a plain error review. The district court properly instructed the jury of the charges against Irfan Amanat and the necessary elements; and we identify no clear and obvious inconsistency with the operative indictment and the government's theory at trial. *See United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012) (explaining that this Court "has consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial" (citation, emphases, and internal quotation marks omitted)).

\*   \*   \*

We have carefully considered Defendants' remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10